IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CLARA JACKSON and DaMON JACKSON, )
a minor, by his father and next friend, )
Dwight Jackson, )
                                        )
                                        )   JURY TRIAL
        Plaintiffs,                     )   DEMANDED
                                        )
v.                                      )   No.
                                        )   02CV082 B(x)
THE CITY OF TULSA, a municipal corporation )
of the State of Oklahoma, PAUL DOWNE and )
HAROLD GOAD,                            )
                                        )
        Defendants.                     )

FILED
FEB 01 2002
Phil Lombardi, Clerk
U.S. DISTRICT COURT

## COMPLAINT

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked, pursuant to 28 U.S.C. § 1343, to secure protection and to redress deprivations of rights secured by the Fourteenth Amendment to the United States Constitution. This Amendment provides for the rights of all persons within the jurisdiction of the United States to enjoy equal protection of the law and freedom from deprivations of liberty and property without due process of law, as enforced by the Civil Rights Act of 1871, 42 U.S.C. § 1983, which provides for protection of the civil rights of all persons and redress of deprivation of rights under color of law.

2. The jurisdiction of this Court also is invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

3. This Court has pendent jurisdiction over Plaintiffs' related state law claims.

4. Venue is appropriate in the United States District Court for the Northern District of Oklahoma, pursuant to 28 U.S.C. § 1391(b).

## PLAINTIFFS

5. The Plaintiffs are United States citizens and are African-American.

6. Plaintiff Clara Jackson is employed as a secretary for Tulsa Public Schools. She is also the wife of Tulsa Police Officer Dwight Jackson.

7. Dwight Jackson is a twenty-five year veteran of the TPD. He appears in this matter only as next friend to his son, DaMon Jackson.

8. Plaintiff DaMon Jackson is a minor child, age fifteen (15). He is the son of Clara Jackson and Dwight Jackson and is proceeding herein through his next friend, Dwight Jackson.

## DEFENDANTS

9. Defendant City of Tulsa ("City") is a municipality incorporated as a city under the laws of the State of Oklahoma and is located in Tulsa County, State of Oklahoma.

10. Defendant City is authorized, pursuant to Oklahoma statutory law and the charter of the City of Tulsa, to establish, maintain and supervise the operations of the Tulsa Police Department (TPD). Okla. Stat. tit. 11, § 22-101 (1991).

11. The policies, procedures, customs and actions of Defendant City which are alleged herein were promulgated, implemented, ratified or otherwise sanctioned under color of the

ordinances of the City of Tulsa and the laws of the State of Oklahoma, and therefore constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

12.     Defendant Paul Downe ("Downe") lives in and is a resident of the State of Oklahoma. He is a Caucasian police officer, employed and trained by the City of Tulsa. He has served as a Tulsa police officer for over twelve years. At all times relevant to this complaint, he was acting as a police officer, using the power and authority provided to him by the City of Tulsa and the laws of the State of Oklahoma. At the times relevant to this complaint, he was also acting in the capacity of Field Training Officer ("FTO") for the City of Tulsa, engaged in retraining Officer Harold Goad. Further, during all times relevant to this complaint, Downe was acting under color of law, pursuant to the policies, procedures and customs of the TPD.

13.     Defendant Harold Goad ("Goad") lives in and is a resident of the State of Oklahoma. He is a Caucasian police officer, employed and trained by the City of Tulsa. At all times relevant to this complaint, he was acting as a police officer, using the power and authority provided to him by the City of Tulsa and the laws of the State of Oklahoma. Further, during all times relevant to this complaint, Goad was acting under color of law, pursuant to the policies, procedures and customs of the Tulsa Police Department

## FACTUAL ALLEGATIONS

14.     On August 3, 2000, DaMon Jackson was preparing to enter Washington High School as a freshman. Excited about entering high school, that afternoon he persuaded his mother,

Jackson Complaint                                                                                          Page 4

Clara Jackson, to drive him to the school to see if there were any activities going on at the school that he might become involved in.

15.   At the same time, Defendants Downe and Goad were patrolling North Tulsa in the area of Washington High School. Defendant Downe was acting as FTO for the TPD, providing refresher training to Defendant Goad. Goad was in need of refresher training due to the fact that he was returning to a field assignment after serving in a specialty assignment. As FTO, it was Downe's duty to instruct Goad in the policies, procedures and customs of the TPD, including the City of Tulsa's expectations of its police officers regarding police procedures for stopping and detaining citizens, using force against citizens, and generally dealing with citizens.

16.   During their patrol, Defendants Downe and Goad were alerted via radio that a stolen green four-door Jeep had been seen near Washington High School. There were conflicting reports concerning the number of persons in the stolen green Jeep. The final report was that the remaining person in the green Jeep was a black female, 19 years old, wearing a white sleeveless t-shirt over a yellow shirt and black shorts. There were also reports that a gun shot had been heard in the area.

17.   Shortly after the call, Defendants Downe and Goad spotted a blue Jeep Cherokee traveling near Washington High School. The blue Jeep Cherokee was Mrs. Jackson's vehicle. Even though Mrs. Jackson's Jeep was blue rather than green, Downe activated his

Jackson Complaint                                                                                          Page 5

emergency lights and stopped the Jackson vehicle. When Mrs. Jackson noticed the flashing lights of Downe and Goad's squad car, she stopped.

18.     After Mrs. Jackson pulled over, both officers drew their guns and ordered the Jacksons to get their hands out of the car. With the leadership of Defendant Downe, the officers did not conduct themselves consistent with appropriate procedures for making a high-risk stop. Instead, they conducted themselves in a manner that raised the risk of injury to all involved. They acted in a manner to scare the Jeep's occupants, rather than to control the incident and assure that everyone was safe.

19.     With their guns drawn, Defendants Downe and Goad exited their squad car and aggressively approached the Jackson vehicle while yelling at the occupants in a manner calculated to scare them. Downe approached the driver's side; Goad approached the passenger's side. After she had stopped, Mrs. Jackson began to exit her car; but when she was told to put her hands out the window and remain in the vehicle, she complied.

20.     When Mrs. Jackson was told to get out of her car, she did so. She was dressed in a white sleeveless shirt and white shorts, and was approximately 40 years old. Other than her race, she did not meet the physical description of the occupant of the green Jeep the officers were looking for. Given her summer dress, it was also apparent that she was not armed. Defendants Downe and Goad totally ignored the fact that there was no cause to believe that Mrs. Jackson and her son had fired shots or were in a stolen car.

21.     Upon exiting her car, Mrs. Jackson attempted to ask Officer Downe what was going on and tried to tell him that she was the wife of a Tulsa police officer. In response, Downe told her to turn around, which she did. When Officer Downe began to cuff her, she again tried to ask what was going on. He then wrenched her arm back, pushed her against the car, and held her there with his body. She did not struggle against him. He finished handcuffing her. He made the handcuffs too tight and they began to hurt. Even though she was not struggling against him, he continued to yank her around and push up against her.

22.     As a result of the actions of Officers Downe and Goad, Mrs. Jackson was frightened for her safety and the safety of her son. In pain and frightened, she yelled to a man on a nearby porch, "Call the police!" Downe yelled at her, "We are the police!" When she again attempted to tell Downe that she was Dwight Jackson's wife, he yelled, "I don't care!" He then pushed harder on the cuffs, making them tighter and causing her further pain. Mrs. Jackson became completely docile and motionless. Downe then pulled out his OC spray, pulled her around so that she was facing him, and sprayed her with OC spray in order to cause her further intense pain. Then, Downe pushed Mrs. Jackson down onto a nearby curb.

23.     It is undisputed that Mrs. Jackson posed no physical threat to Officers Downe or Goad. There was no basis for the physical mistreatment of Mrs. Jackson.

24.     While Downe had been dealing with Mrs. Jackson, Officer Goad had handcuffed DaMon without cause, searched him for weapons, and ordered him to sit on the curb. Goad then detained DaMon on the curb. DaMon witnessed Downe's treatment of his mother.

25.  No action was taken to relieve Mrs. Jackson's pain resulting from the OC spray, even after the altercation was over.

26.  After Officers Downe and Goad determined that they had no basis to arrest the Jacksons, they were uncuffed and allowed to go home.

27.  As a result of their mistreatment, plaintiffs were humiliated and scared and were caused severe emotional distress. They have continued to suffer from that emotional distress. Plaintiffs were also illegally arrested, and Mrs. Jackson was physically assaulted and caused totally unnecessary and severe pain and suffering. Defendants Downe and Goad and the City of Tulsa have been deliberately indifferent to these injuries.

28.  The City of Tulsa subsequently initiated an Internal Affairs investigation regarding the Jackson stop. Ultimately, Downe was found to have violated the TPD's "excessive force" and "use of OC spray" rules.

29.  The sole discipline of Defendant Downe was the forfeiture of one accrued vacation day. Mayor Savage approved of Downe's discipline.

30.  This is the same discipline which officers routinely receive when they negligently lose or misplace City property such as their hand-held radios.

31.  No action was taken against either officer for violating the Department's policies regarding the manner in which felony stops are to be made, even though their violation of those policies is credited by the City as having escalated the incident.

32.     This incident, and the City's treatment of it, is part of a pattern of incidents of excessive force by Tulsa police officers involving African-American citizens. After each such incident, the City has either taken no action, or clearly ineffective action against the officers involved. Through its conduct, the City has made clear its tacit approval and/or deliberate indifference of such conduct by its officers.

33.     This pattern of incidents, together with the City's own statistics, demonstrate a clear pattern and custom of disproportionate use of force and mistreatment of blacks by Tulsa police officers. In spite of the policy makers of Tulsa being aware of this pattern, nothing has been done to insure that the black citizens of Tulsa are safe from excessive and unnecessary force by their police department.

34.     On August 2, 2001, the Jacksons filed a Notice of Claim Under Government Tort Claims Act with the City of Tulsa. On August 6, 2001, the City submitted a letter stating that it would either deny or approve the Jacksons' claim within 90 days. To this day, the City has yet to notify the Jacksons of whether their claim has been denied or approved.

### FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983)

35.     On August 3, 2000, Downe and Goad, under color of law and as agents of the City, used excessive and unreasonable force in the arrest/seizure of Plaintiffs in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States. The force used on Mrs. Jackson and DaMon after they were stopped was objectively excessive because neither posed an immediate threat, resisted arrest or attempted to evade arrest by flight. As

the Jacksons posed no threat to Downe or Goad, Downe's use of OC Spray on Mrs. Jackson was objectively reckless. Downe and Goad's excessive use of force violated Plaintiffs' Fourth Amendment right to be secure against physical harm, and violated their Fourth Amendment-protected sense of security and individual dignity. This excessive use of force has also caused Plaintiffs pain and suffering and severe emotional distress.

36.     On August 3, 2000, Downe and Goad, under color of law and as agents of the City, made a warrantless and unreasonable arrest/seizure of Plaintiffs in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States. First, the Jacksons' vehicle was a blue Jeep Cherokee, and therefore did not match the given description of a "green four-door jeep." Secondly, the suspect/driver was described as a black female, 19 years old, wearing a white sleeveless t-shirt over a yellow shirt and black shorts. When Mrs. Jackson got out of the car, it was clear that she did not fit the given description of the suspect. Mrs. Jackson was wearing a white tank top and white shorts, and was clearly not a teenager. In fact, at the time of the arrest, Mrs. Jackson was 48 years old. The only characteristics that Mrs. Jackson shared with the suspect were her gender and race. Therefore, from the second that Mrs. Jackson stepped out of the car, Downe had no probable cause to arrest Mrs. Jackson. Furthermore, Goad had no reason whatsoever to arrest DaMon. These were wrongful arrests, devoid of probable cause as required by the Fourth Amendment, as applied to the states by the Fourteenth Amendment. These wrongful arrests violated Plaintiffs' Fourth Amendment right to be secure against physical harm, and violated their Fourth

Amendment-protected sense of security and individual dignity. These wrongful arrests/seizures have further caused Plaintiffs pain and suffering and severe emotional distress.

37. Defendant City has been deliberately indifferent to the need for better training, supervision and/or discipline of its police officers with regard to the TPD's excessive use of force against African-American citizens, thereby directly causing injury to the Plaintiffs. This "deliberate indifference" created a municipal policy/custom within the TPD under which Downe and Goad were able to violate Plaintiffs' Fourth and Fourteenth Amendment rights, without fear of any serious repercussions. Defendant City has repeatedly failed to adequately discipline officers who have used excessive force against African-American citizens. This failure to discipline demonstrates the City's acquiescence to police misconduct. Further, these repeated incidents of excessive force are evidence of Defendant City's failure to adequately train and supervise. Downe's conduct on August 3, 2001 is a prime example of Defendant City's failure to train. At the time, Downe was acting as a Field Training Officer for the TPD. Still, Downe admittedly used excessive force on Mrs. Jackson in the presence of a trainee (Goad). Nonetheless, Downe continues to act as a Field Training Officer. Downe continues to train officers as to the acceptable way to conduct police business. Further, the City "disciplined" Downe for violation of the TPD's "excessive force" and "use of OC spray" rules by taking one of his accrued vacation days. Officers who lose their hand-held radios are routinely given the same punishment. This clearly shows the

City's indifference towards police officers' excessive use of force against citizens. Defendant City's indifferent attitude towards excessive use of force has created an atmosphere within the TPD where constitutional violations are sanctioned.

38.   According to its own statistics, the TPD has repeatedly used force disproportionately on African-American citizens. As victims of this disproportionate use of force, Plaintiffs' Fourteenth Amendment right to equal protection under the laws has been violated. Defendant City has ratified this practice by failing to adequately discipline officers who have used excessive force against African-American citizens. Defendants' deprivation of Plaintiffs' rights, privileges and immunities guaranteed by the Constitution of the United States because of Plaintiffs' race has further caused Plaintiffs to suffer the badges and incidents of slavery in violation of the Thirteenth and Fourteenth Amendments to the Constitution.

## SECOND CLAIM FOR RELIEF
(Assault and Battery)

39.   By aggressively approaching the Jackson vehicle with their guns drawn and shouting, Downe and Goad intentionally caused Plaintiffs to become reasonably apprehensive of immediate harmful or offensive contact to Plaintiffs' person.

40.   By coming at Mrs. Jackson with his gun drawn, shoving her, wrenching her arm, pepper spraying her and forcing her down onto the curb, Downe intentionally and recklessly brought about harmful and offensive contact to Mrs. Jackson's person, thereby causing her pain and suffering and severe emotional distress.

41. By coming at DaMon Jackson with his gun drawn, searching and handcuffing him without legal justification, Goad intentionally and recklessly brought about harmful and offensive contact to DaMon's person, thereby causing him pain and suffering and severe emotional distress.

42. When Downe and Goad committed this assault and battery, their actions were incidental to and in furtherance of the City's business. Therefore, the City should be liable under applicable agency theories.

### THIRD CLAIM FOR RELIEF
(False Imprisonment)

43. By threat of physical force and without legal justification, Downe and Goad intentionally confined Plaintiffs to a bound area against their will, thereby causing Plaintiffs pain and suffering and severe emotional distress.

44. When Downe and Goad falsely imprisoned Plaintiffs, their actions were incidental to and in furtherance of the City's business. Therefore, the City should be liable under applicable agency theories.

### FOURTH CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress)

45. From the point that Downe and Goad exited their squad car with their guns drawn to the point that they released Plaintiffs from custody, their conduct towards Plaintiffs was intentional, reckless, extreme and outrageous.

46. Downe and Goad's outrageous conduct caused Plaintiffs severe emotional distress.

Jackson Complaint                                                                                                Page 13

47.     When Downe and Goad intentionally inflicted emotional distress upon Plaintiffs, their actions were incidental to and in furtherance of the City's business. Therefore, the City should be liable under applicable agency theories.

WHEREFORE, Plaintiffs demand judgment granting Plaintiffs damages for their pain and suffering and severe emotional distress, all damages allowed under 42 U.S.C. § 1983 and 51 Okla.Stat. § 154, and whatever other relief the Court deems proper. Upon prevailing in this matter, Plaintiffs also request the award of their attorney fees and costs.

                                             Respectfully submitted,

                                             Louis W. Bullock, OBA #1305
                                             Patricia W. Bullock, OBA #9569
                                             Robert M. Blakemore, OBA #18656
                                             BULLOCK & BULLOCK
                                             320 South Boston, Suite 718
                                             Tulsa, Oklahoma 74103-3783
                                             (918) 584-2001
                                             (918) 582-7302 facsimile

                                             ATTORNEYS FOR PLAINTIFFS